E-FILED
Tuesday, 31 January, 2023  04:02:11 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| LISA COMRIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| OSF HEALTHCARE SYSTEM | ) | |
| | ) | |
| Defendant. | ) | |

### **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Lisa Comrie ("Comrie"), by and through the undersigned attorneys, for her Complaint against Defendant OSF Healthcare System ("OSF") alleges as follows:

### **Introduction**

1.     Lisa Comrie is a Risk Management professional and Registered Nurse with more than twenty-five years of experience. Defendant OSF fired her in March 2022 because she repeatedly opposed and complained to management, verbally and in writing, about OSF policies and practices that jeopardized the health, safety, and legal rights of patients at OSF facilities in Urbana and Danville.

2.     As set forth herein, Comrie refused to stand by and allow a deceased patient's body to decompose outside of refrigeration at an OSF hospital, she repeatedly complained about OSFs' shocking treatment of indigent patients' remains that laid in storage for such long periods of time they became liquified, she repeatedly opposed OSF's failure to file court papers in connection with the involuntary detention of mental health patients as required by state law, she repeatedly opposed Defendant's failure to implement "Root Cause Analyses" after serious adverse healthcare events, she repeatedly complained about significant failures related to the health, safety and welfare of

OSFs' patients, and she opposed OSF's submissions of claims to Medicare for stipulations that violate Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007, 42 U.S.C. 1395y(b)(8). On March 21, 2022, OSF terminated her in retaliation for these complaints.

3.      The reasons OSF used to justify her termination were false, pretextual and contrary to public policy. *Inter alia,* she was purportedly fired for handling a tragic event that occurred months earlier in which an obese COVID-19 positive patient in Danville died in the Intensive Care Unit (ICU).  The patient's body size did not fit through the hospital's morgue door and had thus begun to decompose. Although the incident occurred outside of regular business hours, Comrie found a morgue that would accept the body, and arranged the transportation of the patient *with the hospital president's assistance*, thus mitigating further decomposition. To have stood idly by and allowed this body to decompose potentially for days would have violated clear pronouncements in Illinois law requiring the dignified treatment of patients' remains and would have risked transmission of COVID-19 to other patients and staff. OSF's termination of Comrie for this event thus vitiated Illinois public policy.

4.      OSF also, or alternatively, fired Comrie because of her sex, female. Shortly prior to her termination, Becky Robinson ("Robinson") told the team that she wanted more males reporting to her, she gave preferential treatment (compensatory/paid time off) to the only male employee on her team, OSF replaced Comrie with a man after it wrongfully fired her, and the male hospital president who helped her transfer the body in the incident described above was not terminated or disciplined for the event. Comrie's termination thus also violated Title VII and the Illinois Human Rights Act.

5.      Comrie's hard-earned reputation and her distinguished career have irreparably been damaged by OSF's retaliatory and discriminatory conduct. She brings this Action to vindicate her rights and to enforce the clearly mandated public policies of the State of Illinois.

**Jurisdiction and Venue**

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over the claims arising under Illinois law pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) insofar as Defendant's place of business is located and the unlawful employment practices occurred in the Central District of Illinois.   The events giving rise to these claims arose in and around the Urbana Division.

8.      Plaintiff has fulfilled all conditions precedent to the institution of this action under 42 U.S.C. § 2000e. A Notice of Right to Sue was issued by the Equal Employment Opportunity Commission ("EEOC") and Plaintiff has filed this Complaint within 90 days of the receipt of the Notice of Right to Sue.

**Parties**

9.      Comrie is an Illinois resident. She is a Registered Nurse licensed in the State of Illinois and has an MBA, specializing in Healthcare Administration. She worked as Regional Director of Risk Management for OSF's predecessor, Presence Health, starting in or about June 2017. Beginning in or about February 2018, OSF acquired the hospitals in Comrie's region, and thereafter, she worked for OSF until her termination on or about March 21, 2022. In this position, Comrie oversaw risk management and liability claims functions for OSF's Eastern region, which

included two hospitals, an ambulance service, multiple urgent care center and medical office buildings.  She had offices in Urbana and Danville.

10.      OSF is an integrated health system based in Peoria, Illinois. It employs more than 24,000 employees across 147 worksite locations, including 15 hospitals and two nursing colleges located in Illinois and Michigan. It owns and operates other related entities, including OSF Home Care Services, a network of home health and hospice providers. It reported $3.1 billion in net revenue in fiscal year 2020 and has approximately $5.5 billion in total assets.[1]

### Facts

#### *Comrie's Excellent Job Performance and Work History*

11.      As Regional Risk Manager, Comrie oversaw all risk functions and liability claims for OSF's service locations in the Danville and Champaign-Urbana vicinity, including the OSF Heart of Mary Medical Center in Urbana and the Sacred Heart Medical Center in Danville.

12.      Throughout her employment, Comrie's job performance met and exceeded OSF's legitimate expectations. Defendant assessed her as having "solid performance that consistently fulfills expectations" or "regularly exceeds expectations" in its four annual evaluations of her performance for years 2018, 2019, 2020 and 2021.

#### *Comrie's Opposition to OSF's Repeated Failure to Properly Care for the Remains of Deceased Patients*

13.      On or about October 23, 2021, Comrie received a call from the supervisor on duty at Sacred Heart Medical Center regarding a patient who had died. The COVID-19 positive patient was obese and too large to fit through the door to the Danville hospital's morgue. Comrie consulted with the on-call hospital administrator who was the president of OSF's hospital in Danville.

---

[1] See, https://www.osfhealthcare.org/media/filer_public/1f/b5/1fb5ed8a-8dca-4993-9881-9738bd6e95d8/osfhealthcare-annual-report-2020.pdf

14.     Although it was after hours, Comrie called funeral homes in the area and found one with a morgue that could accommodate the patient; however, the funeral home did not have adequate manpower to transport the patient's remains from the hospital to the morgue due to the size. As a result, Comrie and the president of the hospital together assisted with transporting the deceased patient's remains to the morgue, ensuring her body was preserved and decomposition delayed. The president of the Danville hospital thanked Comrie for her efforts to resolve this matter.

15.     Comrie also complained to Robinson and in team meetings on numerous occasions that OSF did not have a clear process in place for disposing of the bodies of indigent patients or unclaimed bodies once they were moved to hospitals' morgue. As a result of this failure, deceased patients' remains languished in OSF hospitals' morgues for months. The corpses would begin to liquify allowing malodorous smells to leak outside the morgue due to neglect and delay.   Comrie researched and obtained cost-efficient bids from local funeral homes to take the unclaimed bodies within her region.

16.     Robinson dismissed Comrie's complaints and efforts, told her she should not be involved in that, and 'it is not your responsibility.'

17.     The Illinois Disposition of the Remains of the Indigent Act provides *inter alia* that each individual in the State regardless of his or her economic situation is entitled to a dignified disposition of his or her remains; that it is a matter of public concern and interest that the preparation, care, and final disposition of a deceased human body be attended to with appropriate observance and understanding; and that it is a matter of public concern and interest that there is a due regard and respect for the reverent care of the human body, for those bereaved, and the overall spiritual dignity of every person. 755 ILCS 66/5.

18.     OSF terminated Comrie for her opposition to its abhorrent treatment of deceased patients' remains and for her resolution of the incident with the obese patient. Had Plaintiff stood by and refused to take the actions she did, the deceased patient's body described above would have remained in the ICU outside of cold storage for hours and likely days. The process of decomposition begins at death and would have progressed significantly in the absence of appropriate cold storage. The hospital would thus have been in violation of this clearly mandated public policy of the State of Illinois had Comrie failed to act. OSF's termination of her employment for her actions with regard to this event and for her repeated complaints regarding its horrific storage of the remains of indigent patients was contrary to public policy.

### Comrie's Complaint about Serious Adverse Health Events and Practices that Posed Risk to the Health, Safety and Welfare of Patients

19.     Throughout the last year of her employment, Comrie repeatedly complained about OSF's deficient handling of numerous adverse healthcare events in Urbana and Danville which she reasonably believed that OSF was at fault and where patients suffered preventable, and in some instances, catastrophic results.

20.     The Illinois Hospital Report Card Act, *inter alia*, protects an employee from retaliation for internal reports regarding activities that the employee reasonably believes pose a "risk to the health, safety, or welfare of a patient or the public." 210 ILCS 86/35. Comrie repeatedly requested verbally and in writing that OSF conduct root cause analysis of serious adverse events to identify errors and develop improved processes. OSF repeatedly dismissed these requests and refused to analyze the cause(s) of these tragedies to prevent recurrences.

21.     OSF's Eastern Region Director and Manager of Quality and Safety were the OSF employees primarily responsible for implementing root cause analyses ("RCA") in response to adverse health events. During the last year of Comrie's employment, repeated notifications were

made to Robinson informing her that the Quality and Safety Director and Manager were unwilling to implement RCAs in response to numerous events and failed to appropriately address, document or investigate known failures in delivery of safe patient care.

22.    As an example, on or about June 19, 2021, a patient presented in Urbana to OSF Emergency Department for treatment.  He was informed he was ready for discharge.   The patient pleaded to staff stating he could not leave because he could not walk.  Emergency department staff physically picked him up and put him in a wheelchair and wheeled him out to the emergency department ramp where he was assisted from the wheelchair and placed on the sidewalk.  Staff then instructed him to get up and leave the premises or the police would be called for trespassing.  After patient did not get up and leave, police were contacted.  As police were talking with patient, they became concerned about his condition and came into the emergency department asking nursing staff to come check patient as he did not appear to be breathing.  Upon assessment, it was determined patient was not breathing and CPR was started.  He was brought back into the hospital where he later expired that same day.  Comrie advocated for an RCA to be performed due to the multiple breakdowns in systems that allowed this event to occur.  She proclaimed this incident did not support the OSF Mission, "to serve person with the greatest care and love".  Despite Comrie's efforts, the local Quality and Safety leaders declined the need for an RCA.  Comrie attempted to get support from Robinson but was unsuccessful.

23.    The next week, on or about June 26, 2021, a patient died while hospitalized, after cardiac surgery. Immediately after this unexpected death the surgeon contacted the following leaders in Urbana, Chief Medical Officer (CMO), Quality Director, Quality Manager, and Comrie requesting an RCA be conducted regarding the death and care OSF provided to the patient.  The quality leaders refused to implement an RCA. Comrie reasonably believed that an RCA was

warranted in this situation, and advocated on behalf of the Surgeon's request to management, including the CMO and her supervisor Robinson, that the RCA was necessary in this case. Despite her recommendation and that of the surgeon, OSF refused to conduct the RCA within an appropriate timeframe.

24.    As another example, a few months later, on or about September 21, 2021, a patient presented to the OSF Emergency Department with acute cardiac and respiratory symptoms. Plaintiff learned and believed that OSF's treatment of this patient was improperly delayed and thus an RCA would be beneficial. Quality leaders refused to timely implement an RCA for this event despite the delivery of care met the criteria for such review. Comrie escalated her complaints and advocated that an RCA be conducted regarding this incident, but her appeals were rejected. The patient died on or around October 7, 2021.

25.    On or about October 12, 2021, Robinson criticized Comrie for a 'breakdown of communication' with the local Director and Manager of Quality. This unwarranted criticism was in reference to Comrie's opposition to accept their failure to adequately respond to, investigate and assess causes of adverse events in order to formulate process changes which could mitigate risk in the future.

26.    As another example, on or about January 15, 2022, a patient in Danville presented to the Emergency Department and was determined to have suffered a hemorrhagic stroke and, as a result of the Defendant's neglect, was sent to the wrong hospital. It was determined this patient needed a higher level of intervention and was to be transferred to the University of Chicago (UOC) hospital using OSF's ambulance service.   However, OSF's discharge paperwork inaccurately reflected she was to be transferred to the University of Illinois Chicago (UIC) hospital, resulting in a violation of the Emergency Medical Treatment and Labor Act, 42 U.S.C. 1395dd.

27.    Mr. Hill, hospital President, contacted the ambulance crew director asking them to go back and pick up the patient and take her to the correct hospital, but they refused stating they needed to eat lunch and take a nap.   Meanwhile, the patient with an acute bleed had a delay in receiving intervention and Defendant violated The Emergency Medical Treatment and Active Labor Act (EMTALA) by leaving the patient at a hospital that had not agreed to treat her.   Plaintiff was able to eventually arrange for the patient to be picked up by a Chicago ambulance service and transferred from UIC to UOC and she requested that an RCA be conducted. Her request was declined.

28.    As another example, on or about November 17, 2021, in Danville, OSF's Regional Director of Security contacted Comrie to expressed frustration that an RCA was not being conducted with a patient who required physical restraints during preparation for transfer to an acute mental health facility.  A non-emergency medical secure car transport service (HRT Professionals) had been contacted to facilitate transport.  As the patient was departing the emergency department, an OSF nurse injected him with a sedative, inserting the syringe through his clothing, in violation of numerous health and safety protocols.  Once the patient was placed in the transfer vehicle, he kicked out the window of the car.  It was determined this patient was too violent to be transported by this means.  Comrie immediately contacted the State's Attorney to request a Judge's order for patient to be transported by county deputies due to his level of violence.  Time was of the essence with mental health bed resources being limited and this patient had already been detained in the Emergency Department for a long time awaiting bed availability. The process of getting the Judge's order was accomplished in less than two hours.  Comrie advocated for an RCA to be conducted in response to this event, and Comrie had numerous communications with Robinson about what happened, urging that new protocols be implemented going forward with managing

violent patients. Robinson rejected Comrie's complaints and offered no support for addressing such event in the future.

29.     OSF's termination of Comrie for her opposition and complaints about adverse healthcare events like those described above, and the policies and practices that caused them, was contrary to the public policies enunciated in the Illinois Hospital Report Card Act, 210 ILCS 86/35.

*Comrie's Complaints and Opposition to OSF's Failure to Comply with*
*Due Process Requirements set forth in the Illinois Mental Health Code*
*Relating to the Involuntary Commitment of Mental Health Patients*

30.     OSF is required to follow the Illinois Mental Health Code requirements governing involuntary admission of persons due to mental illness. 405 ILCS 5/3-600 *et seq*.

31.     *Inter alia*, the Illinois Mental Health Code requires:

Within 24 hours, excluding Saturdays, Sundays and holidays, after the respondent's admission under this Article, the facility director of the facility shall file 2 copies of the petition, the first certificate, and proof of service of the petition and statement of rights upon the respondent with the court in the county in which the facility is located. Upon completion of the second certificate, the facility director shall promptly file it with the court and provide a copy to the respondent. The facility director shall make copies of the certificates available to the attorneys for the parties upon request. Upon the filing of the petition and first certificate, the court shall set a hearing to be held within 5 days, excluding Saturdays, Sundays and holidays, after receipt of the petition. The court shall direct that notice of the time and place of the hearing be served upon the respondent, his responsible relatives, and the persons entitled to receive a copy of the petition pursuant to Section 3-609.  405 ILCS 5/3-611.

32.     OSF repeatedly failed to comply with the above reporting and court-filing requirements. In the five years of Comrie's employment, OSF repeatedly refused to file petitions relating to patients who had been involuntarily admitted as required. In fact, Comrie is unaware of any such petitions that were filed in the courts, despite these illegal involuntary admissions dating back for a half decade.

33.     OSF was aware that they were violating this law and continued to do so.  Comrie communicated with OSF management at her Danville facility on numerous occasions regarding

OSF's knowing failure to comply with this law. She repeatedly told Robinson, the Emergency Department Director and Manager, the Chief Medical Officer, and multiple Hospital Presidents that OSF was not in compliance with the Illinois Mental Health Code. Petitions and certificates had never been filed in the Court system as legally required. Comrie even raised this concern during Risk Management team meetings where it was identified such illegal practice was being upheld across the entire OSF system. Yet Robinson failed to acknowledge or implement any change in practice.

34. At the heart of these complaints was a matter of serious concern: OSF was holding mental health patients involuntarily, without filing anything in Court, thus violating their due process rights.

35. OSF's termination of Comrie's employment because of these complaints was contrary to Illinois public policy, including that set forth in the Illinois Mental Health Code, above.

### Complaints about Medicare Billing

36. During her employment, Comrie repeatedly complained to Robinson and others in management that OSF was improperly billing Medicare or altering such bills for claims being submitted to Medicare for reimbursement. OSF lacked standardization of process when it came to adjusting patient's bills.

36. Comrie repeatedly told Robinson that unlawful practice with Medicare billing was being performed either in the form of unreported write-offs or inappropriate billing according to hospital acquired conditions. This violates the MMSEA Section 111 mandatory reporting. See, 42 U.S.C. 1395y(b)(8). Robinson dismissed her complaints.

37. Upon admission, OSF patients are assigned a "fall risk score" that assesses their risk for falls and potential injury if a fall occurred during hospitalization. Patients that are assigned

high fall scores should be provided remediations and preventive measures, such as bed alarms, hourly rounding, one to one observation, etc.

38.     During her employment, Comrie repeatedly complained that OSF did not consistently follow these national safety protocols leaving vulnerable patients at risk for harm.

39.     On numerous occasions, Medicare patients suffered preventable falls and injuries due to OSF's failure to implement preventive measures, described above. On these occasions, Comrie told Robinson that an unlawful practice with Medicare billing was being performed either in the form of unreported write-offs or inappropriate billing according to hospital acquired conditions. This violates the MMSEA Section 111 mandatory reporting. See, 42 U.S.C. 1395y(b)(8). Robinson dismissed her complaints.

40.     OSF terminated Comrie in retaliation for these complaints.

### *Sex Discrimination*

41.      On or about December 13, 2021, during an in-person team meeting, Robinson told the team she needed "more males" on the risk management team. At that time, one male and eight females reported to her.

42.     On or about February 11, 2022, Robinson offered the one male who reported to her an extra day off because he worked outside his normal schedule. In contrast, Comrie regularly worked outside her normal schedule and Robinson did not similarly offer her compensatory paid time off on those occasions.

*OSF's Termination of Comrie's Employment was a*
*Pretext for Sex Discrimination and Retaliation*

43.    On March 21, 2022, OSF terminated Comrie's employment because of her sex and

in retaliation for her above-described complaints and opposition to its repeated violations of public

policy and State and Federal laws.

44.    The reasons OSF provided for the termination were false and pretextual. As set

forth above, OSF claims it fired her for her handling of the deceased patient whose remains would

not fit in the hospital's morgue, despite the male hospital president who helped facilitate the

transfer of the body was not disciplined or terminated.  OSF claimed that Comrie should have

redirected the event to a nursing leader, and this claim was false and pretextual. Comrie spoke to

a supervisor and then called the hospital president, who was the administrator on call, pursuant to

OSF policy. Had Comrie stood by and not intervened, the integrity of the large COVID19 infected

body would have been compromised by the onset of decomposition.

45.    OSF also stated Comrie was fired because she met with a patient's family without

authorization after the death of their child and that she uploaded photos of the event. These

statements were false – Comrie did not meet with the family, and she did not upload photos as

stated.

46.    Further, OSF also purported fired her for contacting in-house legal counsel. This

statement was pretextual – other risk managers frequently spoke to in-house counsel with questions

and concerns in analogous situations but were not fired.

47.    OSF did not follow its progressive disciplinary policy when it terminated Comrie's

employment. She was not given any prior warning of the above events, and in fact, the December

2021 performance review was positive and did not mention her handling of the deceased patient's

remains, despite that the incident occurred in October 2021. Further, she was not given any opportunity to respond to the allegations regarding the other events, which as set forth above were false.

48.     Comrie was singled out for termination because of her history of raising concerns and opposition to OSF's illegal conduct and because of her sex.

49.     Comrie was replaced by a male employee after her termination.

50.     Comrie has suffered significant damages as a result of her unlawful termination, including monetary and financial losses and emotional distress.

## COUNT I
## Illinois Whistleblower Act

51.     Comrie repeats and re-alleges each and every allegation above as if fully set forth herein.

52.     At all relevant times, OSF was Plaintiff's "employer" within the meaning of the IWA. 740 ILCS 174/5.

53.     At all relevant times during her employment Comrie was an "employee" of Defendants within the meaning of the IWA. 740 ILCS 174/5.

54.     Section 20 of the IWA provides: "An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation, including, but not limited to, violations of the Freedom of Information Act."

55.     Section 10 of the IWA provides: "An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency if the employee has reasonable

cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/10.

56.     Defendant retaliated against Comrie in violation of the above quoted sections of the IWA for opposing and refusing to participate in the illegal conduct described above.

57.     Defendant created a *de facto* rule prohibiting Comrie from reporting its illegal conduct to the authorities.

58.     Defendant's above-described retaliatory conduct violated Sections 10 and 20 of the IWA.

59.     Comrie has suffered financial and pecuniary loss, emotional distress, and damage to her career as a result of OSF's illegal retaliation and termination of her employment described above.

**WHEREFORE**, Comrie respectfully requests that this Court enter judgment against Defendant as follows:

    a.  Enter judgment finding Defendants terminated her employment unlawfully violation of the Illinois Whistleblower Act;
    b.  Reinstate Plaintiff to her previous position or award front pay;
    c.  Award Plaintiff her lost wages, value of lost benefits and other monetary losses caused by Defendant's unlawful termination of her employment;
    d.  Award Plaintiff compensatory damages and damages for emotional distress;
    e.  Award Plaintiff punitive damages;
    f.  Award Plaintiff attorneys' fees and litigation costs as authorized by the IWA, 740 ILCS 174/30; and
    g.  Such other relief the Court determines is just and appropriate.

## COUNT II
## ILLINOIS COMMON LAW RETALIATORY DISCHARGE

60.     Plaintiff hereby realleges and incorporates the paragraphs above, as if fully set forth herein.

61.     Comrie opposed OSF's illegal and fraudulent accounting practices described above.

62.     Comrie's complaints were protected by the public policies reflected in the laws of the State of Illinois and the United States as set forth above.

63.     Defendant terminated Plaintiff's employment in retaliation for her protected conduct.

64.     The reasons Defendant provided to justify the termination were false and pretextual.

65.     Plaintiff's termination contravened clearly mandated public policies of the State of Illinois, including the Illinois Disposition of the Remains of the Indigent Act ("IDRIA"), 755 ILCS 66/5, the Illinois Mental Health and Developmental Disabilities Code ("IMHDDC"), 405 ILCS 5/3-611, the Illinois Adverse Healthcare Events Reporting Law ("IAHERL"), 410 ILCS 522-10/20, and the Illinois Hospital Report Card Act ("IHCRA"), 210 ILCS 86/35.

66.     Defendant's retaliatory termination of Comrie's employment caused her to suffer significant damages, including lost wages and benefits, diminished reputation and irreparable damage to her career, and severe emotional distress.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

      a.     Enter judgment finding Defendant terminated her employment unlawfully violation of the public policy of the State of Illinois;
      b.     Reinstate Plaintiff to her previous position or award front pay;
      c.     Award Plaintiff her his lost wages, value of lost benefits and other monetary losses caused by Defendant's unlawful termination of her employment;
      d.     Award Plaintiff compensatory damages and damages for emotional

distress;

     e.       Award Plaintiff punitive damages; and

     f.       Such other relief the Court determines is just and appropriate.

## COUNT III
## <u>Violations of Illinois Hospital Report Card Act</u>

67.    Comrie repeats and realleges each and every allegation above as if fully set forth herein.

68.    The Illinois Hospital Report Card Act ("IHCRA") protects the right of the public to access information about the quality of healthcare provided in Illinois hospitals so consumers can make better decisions about their choice of healthcare provider. 210 ILCS 86/5.

69.    The IHCRA protects from retaliation an employee-whistleblower who does any of the following: (1) Discloses to the nursing staff supervisor or manager, a private accreditation organization, the nurse's collective bargaining agent, or a regulatory agency any activity, policy, or practice of a hospital that violates this Act or any other law or rule or that the employee reasonably believes poses a risk to the health, safety, or welfare of a patient or the public; (2) Initiates, cooperates, or otherwise participates in an investigation or proceeding brought by a regulatory agency or private accreditation body concerning matters covered by this Act or any other law or rule or that the employee reasonably believes poses a risk to the health, safety, or welfare of a patient or the public; (3) Objects to or refuses to participate in any activity, policy, or practice of a hospital that violates this Act or any law or rule of the Department or that a reasonable person would believe poses a risk to the health, safety, or welfare of a patient or the public; (4) Participates in a committee or peer review process or files a report or complaint that

discusses allegation of unsafe, dangerous, or potentially dangerous care within the hospital. 210 Ill. Comp. Stat. Ann. 86/35.

70.     As set forth above, Plaintiff made repeated complaints to OSF management, verbally and in writing, and refused to participate in activities covered by this Section.

71.     The above-described incidents and were known to numerous OSF managers who had an opportunity to correct the problems but chose not to.

72.     OSF fired Plaintiff as a result of her conduct protected by this Section.

**WHEREFORE**, Plaintiff respectfully requests that this Court award the following damages to her and against Defendants:

    A.  Enter judgment finding Defendants terminated her employment unlawfully violation of the IHCRA;
    B.  Reinstate Plaintiff to her previous position or award front pay;
    C.  Award Plaintiff her lost wages, value of lost benefits and other monetary losses caused by Defendant's unlawful termination of her employment;
    D.  Award Plaintiff compensatory damages and damages for emotional distress;
    E.  Award Plaintiff punitive damages;
    F.  Award Plaintiff attorneys' fees and litigation costs to effectuate the purpose of the IHCRA, 210 ILCS 86/40; and
    G.  Such other relief the Court determines is just and appropriate.

### COUNT IV
### (False Claims Act Retaliation – 31 U.S.C. 3730(h))

73.     Comrie repeats and realleges the allegations set forth above.

74.     The False Claims Act ("FCA") prohibits the submission of fraudulent claims for payment to the United States Government and protects taxpayers from misuse of public funds. See, 31 U.S.C. 3729 et seq. Its anti-retaliation provisions provide in relevant part as follows: "Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee,

contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 29 U.S.C. 3730(h).

75.    As set forth above, during her employment, on numerous occasions, Comrie complained, opposed and attempted to stop OSF from improperly billing Medicare for injuries and claims that it was responsible for, due to its failure to implement precautions for known risks such as falls.

76.    OSF terminated Comrie in retaliation for these complaints.

77.    Comrie suffered damages as a result of OSF's retaliatory conduct, including financial losses and emotional distress.

**WHEREFORE,** Comrie prays for judgment against the Defendant as follows:

a.    Enter judgment finding Defendant retaliated against and terminated her employment unlawfully violation of the FCA;
b.    Reinstate Plaintiff to her previous position or award front pay;
c.    Award Plaintiff her lost wages, value of lost benefits and other monetary losses caused by Defendant's unlawful termination of her employment;
d.    Award Plaintiff 2 times the amount of back pay pursuant to 29 U.S.C. 3730(h);
e.    Award Plaintiff interest on the back pay;
f.    Award Plaintiff compensation for special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees; and,
g.    Such other relief the Court determines is just and appropriate.

## COUNT V
### (Sex Discrimination in Violation of Title VII)

78.    Comrie repeats and realleges the allegations set forth above.

79.     Comrie is female.

80.     OSF discriminated against Comrie by terminating her employment and treating her less favorably than similarly situated male employees because of her sex, as set forth above.

81.     The aforesaid discriminatory policies, practices, and directives as alleged herein, violate Title VII.

82.     As a result, Comrie has lost wages and benefits of her employment and has suffered emotional distress. Damages are ongoing.

83.     Defendant discriminated against Plaintiff with malice and/or reckless indifference to her federally protected rights.

**WHEREFORE**, Plaintiff respectfully requests that this Court award the following damages to her and against Defendants:

A.  Find the Defendant's conduct is in violation of Title VII;
B.  Grant a permanent injunction against Defendant and its officers, agents, and managers preventing them from violating Title VII;
C.  Order all relief required to make Comrie whole for the above violations of Title VII, including but not limited to back pay, front pay, future lost earnings, and reimbursement for other employment related losses and benefits, in an amount to be shown at trial, plus interest;
D.  Award her compensatory, consequential, compensatory, and other damages for emotional pain, humiliation, depression and anxiety, and for career loss/lost earning capacity, in an amount to be shown at trial.
E.  Award her punitive damages in an amount to be determined at trial for Defendant's willful, wanton or reckless misconduct.
F.   Award her legal fees, litigation costs, any additional relief as may be just and warranted in this action.
G.  Award her other relief the Court determines is necessary and just to make her whole.

## Count VI
### (Sex Discrimination – Illinois Human Rights Act)

84.     Plaintiff re-alleges the above allegations as if set forth herein.

85.     Defendants discriminated against Comrie by terminating her employment because of her sex, as set forth above.

86.     The aforesaid discriminatory policies, practices, and directives as alleged herein, violate the IHRA.

87.     As a result, Comrie has lost wages and benefits of her employment and has suffered emotional distress. Damages are ongoing.

88.      The aforesaid discriminatory policies, practices, and directives as alleged herein, violate the IHRA, 775 ILCS 5/1 et seq.

**WHEREFORE**, Plaintiff respectfully requests that this Court award the following damages to her and against Defendants:

A.  Award her back pay, front pay, future lost earnings, and reimbursement for other employment related losses and benefits, in an amount to be shown at trial, plus interest so as to make her whole.

B.  Award her compensatory damages for emotional pain, humiliation, depression and anxiety, and for career loss/lost earning capacity, in an amount to be shown at trial.

C.  Award her punitive damages in an amount to be determined at trial for Defendant's willful, wanton or reckless misconduct.

D.                                                         Award her legal fees, litigation costs, any additional relief as may be just and warranted in this action.

E.  Award her other relief the Court determines is necessary and just to make her whole.

## DEMAND FOR JURY TRIAL

Comrie demands a jury trial on all claims alleged herein.

Dated: January 30, 2023                           Respectfully Submitted:

                                                  LISA COMRIE
                                                  Plaintiff,

                                          By:___/David Fish_____
                                                        One of Her Attorneys

David Fish
Fish Potter Bolaños, P.C.
200 E. 5th Avenue, Suite 115
Naperville, IL 60653
(331) 425-7083
docketing@fishlawfirm.com

Martin Stainthorp
Fish Potter Bolaños, PC
111 East Wacker Drive, Suite 2300
Chicago, Illinois 60601
www.fishlawfirm.com
(312)861-1800